STALLCUP v. BOARD OF TRUS-
TEES OF FIREMEN'S R. & P.
FUND OF OKLAHOMA CITY.

No. 29284.  Sept. 10, 1940.

105 P. 2d 1039.

Hugh Bland and Deupree & McCabe,
all of Oklahoma City, for plaintiff in
error.

A. L. Jeffrey, Municipal Counselor,
and J. O. Moss, both of Oklahoma City,
for defendant in error.

DAVISON, J.  This cause originated
before the Board of Trustees of the Fire-
men's Relief and Pension Fund of Ok-
lahoma City, Okla.

Paul Stallcup became a member of the
Oklahoma City fire department in Aug-
ust of 1919. He continued in that em-
ployment until July of 1936, having at
that time been relieved from further
duty with the department.

In 1938 he presented to the Board of
Trustees of the Firemen's Relief and
Pension Fund of Oklahoma City his ap-
plication for a disability pension under
the provisions of section 6103, O. S.
1931. Testimony was introduced in con-
nection with the claim, and upon con-
sideration thereof, relief was denied.

From the adverse ruling of the board
the applicant appealed to the district
court of Oklahoma county in the man-
ner provided by section 6102, O. S. 1931,
where, upon review of the evidence, the
claim was again denied. Mr. Stallcup
now presents the cause to this court for
review, appearing herein as plaintiff in
error.

The evidence discloses that a short
time after his discharge the claimant
became affected with a severe nervous
and mental disorder.

His physician, Dr. J. W. Townsend,
diagnosed his difficulty as "heat ex-
haustion with severe nervous disturb-
ance of some kind," which the doctor
(from the history given him by the pa-
tient) attributed to incidents connected
with the performance of fireman's duties
while the applicant was a member of
the Oklahoma City fire department.

After remaining a short time in a
local hospital, Mr. Stallcup was trans-

ferred to the State Hospital at Norman, where it was determined by Dr. Rayburn of that institution that he was suffering from "syphilis of the central nervous system," also referred to as neurosyphilis (more exactly referred to by the medical profession as "psychosis with syphilitic meningo encephalitis"). This condition, Dr. Rayburn testified, was, in his opinion, attributable to a pre-existing syphilitic condition of some years' standing.

The applicant responded favorably to treatment for the disorder and was released from the hospital, but according to his and other testimony produced by him, is still disabled.

Subsequent to his discharge from the hospital he was treated by Dr. M. B. Warren, a chiropractic doctor, who diagnosed the applicant's condition as a nervous condition and, with reference to the cause thereof, testified:

"A. Well, I couldn't say what the direct cause would be unless it was from some injury of course. Q. Would the fact that he became overheated at a fire in 1936, about July 15th, what effect would you say that had on his condition at the present time? A. Any overheating will cause nervous condition; when they get hot or exhausted from any over-exercise."

The right to a fireman's pension for disability rests upon a statutory basis, as does the procedure for the enforcement of that right. The right exists when and if a fireman becomes "* * * physically or mentally disabled while in, and in consequence of, the performance of his duty as such employee of such regularly constituted fire department. * * *" Section 6103, O. S. 1931, supra.

The plaintiff in error takes the position that under the evidence reflected by the record he was entitled to a disability pension. Under the law he was entitled to that pension only if his disability was contracted "in consequence of the performance of his duty." Obviously, the nature of the disability was such as to be a proper subject of med-

ical proof in determining the cause thereof. While the testimony of Doctor Rayburn is not the only proof on the point, that testimony strongly supports the view that claimant's disability is due exclusively to the pre-existing syphilitic condition and was in no wise attributable to any incident or occurrence connected with the performance of plaintiff in error's duties as fireman. (No contention is made that the contracting of syphilis was so connected.)

It is true that on cross-examination Dr. Rayburn testified in substance that some medical authorities entertained the view that neurosyphilis may be precipitated by external stimuli which thus become contributing or precipitating factors, but, according to this doctor, such influences did not, in his opinion, contribute to plaintiff in error's disability.

Thus, there is in the record competent testimony supporting the view that plaintiff in error's disability was not "in consequence of" the performance of his duties as a member of the fire department. The decision of the board on the question of fact was not contrary to the evidence. In this connection the board specifically found that plaintiff's condition was not caused or aggravated by the performance of his duties as fireman. Since this finding was supported by competent evidence and was not against the clear weight of the evidence viewed as a whole, it was the duty of the district court to approve the decision of the board. In re Application of Gruber, 89 Okla. 148, 214 P. 690; Board of Trustees of Firemen's Relief & Pension Fund in and for City of Tulsa v. Naughton, 180 Okla. 270, 68 P. 2d 845.

In presenting his appeal to this court, plaintiff in error discusses at length those cases arising under the Workmen's Compensation Act wherein it has been held that the accidental aggravation of a dormant condition may create a compensable disability, as well as cases under statutes of other jurisdictions applying a similar rule to pensions. The necessity of discussing the application

of that doctrine or theory to the case at bar is eliminated by the finding of the board eliminating such asserted precipitating factors as a contributing cause and the evidence in support of such finding.

Finding no error in the record, the decision of the trial court is affirmed.

BAYLESS, C. J., and CORN, GIBSON, and DANNER, JJ., concur.